J-S68021-17 & J-S68022-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: M.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 909 MDA 2017 |
| APPEAL OF: M.L., MOTHER | | |

Appeal from the Order Entered May 10, 2017
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000165-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: A.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 910 MDA 2017 |
| APPEAL OF: M.L., MOTHER | | |

Appeal from the Order Entered May 10, 2017
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000166-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: A.D.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.L., MOTHER | : | No. 919 MDA 2017 |

Appeal from the Decree May 9, 2017
In the Court of Common Pleas of York County Orphans' Court at No(s):
2016-0177

| IN THE INTEREST OF: M.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 920 MDA 2017 |
| APPEAL OF: M.L., MOTHER | | |

Appeal from the Decree May 9, 2017
In the Court of Common Pleas of York County Orphans' Court at No(s):
2016-0178

BEFORE:   LAZARUS, J., DUBOW, J., and STRASSBURGER*, J.

MEMORANDUM BY DUBOW, J.:                    **FILED DECEMBER 20, 2017**

In these consolidated appeals, M.L. ("Mother") challenges the decrees entered May 9, 2017, in the Court of Common Pleas of York County, which involuntarily terminated her parental rights to her minor sons, M.L., born in October 2010, and A.D.L., born in April 2014, (collectively, "the Children"). Mother also challenges the order entered that same day, changing M.L.'s permanency goal to adoption, and the order entered May 10, 2017, changing A.D.L.'s permanency goal to adoption.[1]  Because the record supports the trial court's decision, we affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

The record reveals that the York County Office of Children Youth and Families ("CYF") filed applications for emergency protective custody of the

_____

* Retired Senior Judge assigned to the Superior Court.

[1] The decrees also terminated the parental rights of M.L.'s father, K.M.W., and the parental rights of A.D.L.'s father, A.D.M.  Neither father appealed the termination of his parental rights.

Children on August 4, 2014. In its applications, CYF averred that Mother suffered from significant mental health issues, engaged in marijuana use, and lacked stable housing. Application for Emergency Protective Custody (M.L.), 8/4/14, at 3-6. The trial court granted the applications, and placed the Children in foster care. The court entered a shelter care order as to M.L. on August 8, 2014, and entered a shelter care order as to A.D.L. on August 12, 2014. CYF filed dependency petitions, and the court adjudicated the Children dependent by orders entered September 18, 2014.

Following the adjudication of dependency, Mother made significant progress in complying with the Children's permanency plans. CYF filed motions for modification of placement on May 27, 2015, in which it requested that the trial court return the Children to Mother's care, while maintaining their dependency. The court granted the motions by orders entered that same day.

However, on March 1, 2016, CYF filed additional applications for emergency protective custody of the Children. CYF averred that Mother was once again without stable housing. Application for Emergency Protective Custody (M.L.), 3/1/16, at 1-2. The trial court granted the applications. The court entered a shelter care order as to A.D.L. on March 7, 2016, and entered a shelter care order as to M.L. on March 10, 2016. The court entered dispositional orders on March 24, 2016.

On December 29, 2016, CYF filed petitions to involuntarily terminate Mother's parental rights to the Children, and to change the Children's permanency goals from reunification to adoption. The trial court conducted a

combined termination and goal change hearing on March 13, 2017. Following the hearing, on May 9, 2017, the trial court entered decrees terminating Mother's parental rights to the Children involuntarily. The court entered an order changing M.L.'s permanency goal to adoption that same day, and entered an order changing A.D.L.'s permanency goal to adoption on May 10, 2017.[2] Mother timely filed notices of appeal on June 7, 2017, along with concise statements of errors complained of on appeal.

**ISSUES ON APPEAL**

Mother now raises the following issues on appeal.

[1.] Whether the Trial Court abused its discretion and/or erred as a matter of law in terminating the parental rights of [Mother] when [Mother] had remedied the conditions that had caused the Children to be removed from her care[?]

[2.] Whether the Trial Court abused its discretion and/or erred as a matter of law in changing the dependent Children's permanency goals to adoption when [Mother] asserts such was not in the best interests of the Children[?]

Mother's Brief at 7.

**LEGAL ANALYSIS**

We first address Mother's claim that the trial court erred and/or abused its discretion by involuntarily terminating her parental rights.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law

_____

[2] The orders also established concurrent goals of placement with a legal custodian.

- 4 -

or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), (8), and (b). [3] We need only agree with the

_____

[3] Mother did not challenge the termination of her parental rights pursuant to subsection 2511(b) in her concise statement, nor does she include such a challenge in her statement of question involved, or in the argument section of her brief. Therefore, we conclude that any challenges to Section 2511(b) are waived. *See In re M.Z.T.M.W.*, 163 A.3d 462, 466 (Pa. Super. 2017) (holding that the appellant waived her challenge to Section 2511(b) by failing to include it in her concise statement and statement of question involved.)

court as to any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Section 2511(a)(2), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ****

23 Pa.C.S.A. § 2511(a)(2).

**Termination Pursuant to Section 2511(a)(2)**

We address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot

be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

In the instant matter, the trial court found that is Mother is incapable of parenting the Children, and that she cannot, or will not, remedy her parental incapacity. Trial Court Opinion (M.L.), 5/9/17, at 17. The court reasoned that the conditions requiring the Children's placement in foster care continue to exist, and emphasized Mother's instability and lack of progress during the Children's dependency. *Id.* at 17-19. The court questioned Mother's judgment, and expressed concern that Mother will become overwhelmed if the Children are returned to her care. *Id.* at 18.

In response, Mother argues that she complied with her Family Service Plan ("FSP") goals. Mother's Brief at 14, 20. Mother emphasizes that she has housing and employment, that she resolved her mental health issues, and that she no longer uses marijuana. *Id.* at 14-16, 20. Mother further emphasizes that she maintained a relationship with the Children and cooperated with their foster parents. *Id.* at 13-14, 17-18, 20.

Our review of the record supports the trial court's findings. During the termination and goal change hearing, CYF caseworker, Kristina Scott, testified that Mother struggled to comply with the Children's permanency plans after the trial court removed them from her care a second time in March 2016. Several service providers discharged Mother unsuccessfully. N.T., 3/13/17,

at 197-99; CYF Exhibits 9, 11, and 12. Mother's mental health remained a concern, as she was involuntarily hospitalized for a week in April 2016. *Id.* at 182-83. Mother also struggled with a variety of unresolved legal issues. *Id.* at 202. Ms. Scott explained that Mother "owes $2,410.50 in past fines for her traffic citations that she had warrants for in the last Court hearing and that has to be paid January 19, 2018 or she will be incarcerated. She owes $1,212.85 in [Accelerated Rehabilitative Disposition ("ARD")] costs. She owes $2,100.00 in past rent and magisterial costs." *Id.*

Ms. Scott testified that Mother has been much more compliant with the Children's permanency plans in recent months. Mother is employed, has housing, maintains contact with the Children consistently, and is taking her mental health medication. *Id.* at. 185, 188-91. Nonetheless, Ms. Scott expressed concern that Mother will become overwhelmed if the Children are returned to her care again. *Id.* at 203-04. She explained, "we have seen that [Mother] is able to pull herself together enough . . . . But it is more along the lines of maintaining it. It always falls apart." *Id.* at. 203.

Importantly, the record reveals that Mother failed to parent the Children even when the trial court returned them to her care between May 2015 and March 2016. The Children's foster mother, A.W. ("Foster Mother"), testified that she often assisted Mother by caring for the Children during that time. *Id.* at 225. Foster Mother estimated that A.D.L. actually spent "about 90 percent" of his time living with her, rather than Mother. *Id.* at 224. While M.L. spent considerably more time living with Mother, he would occasionally return to

Foster Mother's home for the weekend. *Id.* at 225. Foster Mother recalled, "[h]e did spend time with us whenever we would do an activity, go to the park, go to a circus. . . . Even when we traveled out of town for holidays[.]" *Id.* at 224-25.

Thus, the record confirms that Mother is incapable of parenting the Children, and that Mother cannot, or will not, remedy her parental incapacity. As the history of this case demonstrates, Mother is unable to maintain the stability necessary to care for the Children. While Mother makes occasional progress toward resolving the Children's dependency, she fails to maintain that progress on a consistent basis. The Children cannot wait for permanency any longer. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *In re Adoption of R.J.S.*, 901 A.2d 502, 513 (Pa. Super. 2006).

**GOAL CHANGE**

We next consider Mother's second issue on appeal, in which she argues that the trial court erred and/or abused its discretion by changing the Children's permanency goals from reunification to adoption.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the

lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

***In re R.J.T.***, 9 A.3d 1179, 1190 (Pa. 2010).

Goal change proceedings are governed by the Juvenile Act, 42 Pa.C.S. §§ 6301–6375. This Court has summarized the requisite analysis as follows.

> Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia:* (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

***In re A.B.***, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

Here, the trial court found that the Children's best interests would be served by changing their permanency goals from reunification to adoption. Trial Court Opinion (M.L.), 5/9/17, at 10. As it did when discussing the termination of Mother's parental rights, the court questioned Mother's judgment and emphasized her instability and lack of progress during the Children's dependency. ***Id.*** at 11-14.

Mother again argues that she complied with her FSP goals. Mother's Brief at 21-22. Mother argues that she maintained stable housing and

- 10 -

employment, addressed her mental health needs, and maintained a bond with the Children. *Id.*

We conclude that the record supports the trial court's findings. As discussed above, the history of this case reveals that Mother is able to make progress toward resolving the Children's dependency for brief periods of time, but that she has been unable to sustain that progress. While it is true that the Children are bonded with Mother, it was within the court's discretion to conclude that this bond is outweighed by their need for permanence and stability.

Based on the foregoing, we conclude that the trial court did not commit an error of law or abuse its discretion by terminating Mother parental rights, or by changing the Children's permanency goals from reunification to adoption. Therefore, we affirm the court's decrees and orders.

Decrees affirmed. Orders affirmed.
Judge Lazarus joins the memorandum.
Judge Strassburger files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2017